UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FODAY FEIKA,

               Petitioner,

     v.

MERRICK GARLAND,[1] *et al.*,

               Respondents.[2]

_____

               20-CV-1709-LJV
               DECISION & ORDER

      Foday Feika has been detained in the custody of the United States Department

of Homeland Security since November 18, 2019—18 months.  Docket Item 4-1 at ¶ 19.

On November 23, 2020, Feika filed a *pro se* petition for a writ of habeas corpus under

28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal

Detention Facility in Batavia, New York.[3]  Docket Item 1.  The respondents answered

---

[1] The caption has been updated under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall substitute Merrick Garland for William Barr, and Alejandro Mayorkas for Kevin McAleenan, on the docket.

[2] In its memorandum of law, the government argues that the only proper respondent in this matter is Jeffrey Searls, "the person with direct control over [Feika]." Docket Item 5 at 2 n.1.  It is clear that, at the very least, Searls "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).  "Because resolution of who is the proper respondent will not affect the disposition of this petition, the Court will not address it further."  *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014).

[3] Feika also has filed several documents in a submission he calls a "motion to amend."  Docket Item 9.  But those documents include only a report on his mental health, other medical records, and details about his immigration proceedings— not any new claims or factual allegations relevant to his petition.  The Court therefore construes Docket Item 9 as a status update.

the petition on January 11, 2021, Docket Items 4, 5, and Feika replied on January 22, 2021, Docket Item 7.

For the reasons that follow, this Court grants Feika's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

Feika is a native and citizen of the Sierra Leone. Docket Item 4-1 at ¶ 5. He entered the United States on August 19, 2004, as a minor with refugee status derived through his mother. *Id.* Five years later, on October 7, 2009, he became a Lawful Permanent Resident.[4] *Id.* at ¶ 13.

On March 21, 2019, Feika was convicted of possession of a forged document. *Id.* at ¶ 17. As a result, DHS issued a warrant for his arrest and a "Notice to Appear," *id.* at ¶ 18, charging that he was subject to removal under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act because of his conviction for "an aggravated felony . . . relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the

---

[4] Feika first attempted to become a Lawful Permanent Resident in 2007, but he did not respond to requests for evidence by the United States Citizenship and Immigration Services, and his application was denied as abandoned in 2008. Docket Item 4-1 at ¶ 6. Because of this, Feika was left without legal status, and removal proceedings were initiated against him in 2009. *Id.* at ¶ 8. Those proceedings were terminated in 2010 after an Immigration Judge confirmed his adjusted status. *Id.* at ¶ 16.

identification numbers of which have been altered for which the term of imprisonment is at least one year," [5] Docket Item 4-2 at 36.

Feika was taken into ICE custody on November 18, 2019. *See* Docket Item 4-1 at ¶ 19. After lengthy proceedings, an Immigration Judge ("IJ") originally ordered Feika removed but then granted withholding of removal on July 28, 2020. *Id.* at ¶ 33. DHS appealed that decision to the Board of Immigration Appeals ("BIA"), *id.* at ¶ 34, and the BIA remanded the matter on January 22, 2021, for further fact finding and for the IJ to conduct a competency hearing, Docket Item 8. On March 30, 2021, the IJ denied relief from removal, and Feika timely appealed that decision to the BIA. *Id.* His appeal remains pending. *Id.*

## DISCUSSION

In its memorandum in opposition to the request for habeas relief, the government begins by taking issue—respectfully, appropriately, but incorrectly—with this Court's prior decisions in cases like this one. Therefore, this Court begins its discussion by addressing the government's concerns and observations.

The government first notes that "[g]enerally, this Court has held that detention exceeding 12 months—absent unique circumstances—is violative of the due process rights of a detainee." *See* Docket Item 5 at 6. That contention is plainly incorrect. In fact, this Court has never found a *per se* violation of a detainee's constitutional rights

---

[5] The respondents note that Feika also was convicted of violating a controlled substances law in New Hampshire in 2018, Docket Item 4-1 at ¶ 17, but it does not appear that this conviction serves as any part of the basis for his removal, *see id.* at ¶ 18; Docket Item 4-2 at 27-28, 36.

based on the length of detention.  Rather, this Court has repeatedly held that *without a hearing addressing risk of flight and danger to others*, detention exceeding a year might well violate due process.  *See, e.g.*, *Forbes v. Garland*, 2021 WL 1588812 (W.D.N.Y. Apr. 23, 2021) (holding that "[b]ecause section 1226(c) does not require an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can serve the government's compelling regulatory interests in detaining [the petitioner] . . . his continued detention [after 25 months] violat[ed] the Due Process Clause"); *Ramos v. Barr*, 2020 WL 4059189 (W.D.N.Y. July 20, 2020) (holding that the petitioner's continued detention after 13 months violated the Due Process Clause for the same reasons).

Along the same lines, the government then argues "[w]ith abundant respect, and utmost deference, . . . that such holdings are in error, and that so long as removal proceedings are ongoing, it is Congress's intent, and not violative of any constitutional rights, that aliens convicted of certain, enumerated crimes, be held in detention *to both assure their appearance in immigration court and to ensure the public safety*."  *See* Docket Item 5 at 6 (emphasis added).  That contention plainly misses the point.  This Court agrees that detaining noncitizens pending removal proceedings "to both assure their appearance in immigration court and to ensure the public safety," *id.*, does not violate due process.  In fact, the hearings that this Court has required are designed precisely to determine whether detention is necessary to "assure [the detainee's] appearance . . . and to ensure the public safety."  *See, e.g.*, *Forbes*, 2021 WL 1588812 at *9 (ordering a bond hearing to determine whether the petitioner's "continued detention [was] necessary to serve a compelling regulatory purpose, such as minimizing

risk of flight or danger to the community").  Without such a hearing, however, a detainee's unduly prolonged detention might well violate due process.  In fact, that is the case here.

## I.  HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Feika is validly detained under 8 U.S.C. § 1226(c) because he is a noncitizen with pending removal proceedings who has been convicted of possession of a forged document.  *See* Docket Item 5 at 3 n.2, 6-7.

Feika disagrees on three grounds.  First, he contends that his "continued detention by respondents is unlawful and contravenes 8 U.S.C. § 1231."  Docket Item 1 at 3 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)).  The Court construes Feika's first claim as arguing that his continued detention violates 28 U.S.C. § 1231(a)(6) because there is "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future."[6]  *See Zadvydas*, 533 U.S. at 701.  Second, Feika argues that his continued detention violates his right to substantive due process under the Fifth Amendment to the United States Constitution.  Docket Item 1 at 4.  And third, he argues that his detention without "a timely and meaningful opportunity to

---

[6] Because Feika is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

demonstrate that [he] should not be detained" violates his right to "procedural due process" under the Fifth Amendment. *Id*. at 4.

## II.   STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Feika's detention so that it can evaluate his first challenge, alleging that his continued detention violates 8 U.S.C. § 1231 as interpreted by the Supreme Court in *Zadvydas*. "Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable." *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation." *Id*. at 53. "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'" *Id*. at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

> The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

*Id*. at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Here, Feika is not subject to a final order because his appeal of the IJ's "decision denying . . . relief from removal" is pending with the BIA. *See* Docket Item 8. This Court therefore agrees with the respondents, *see, e.g.,* Docket Item 5 at 3 n.2, that Feika's detention is governed by 8 U.S.C. § 1226(c). Because Feika is not detained

under section 1231(a), this Court rejects his argument that his detention violates that provision as interpreted by the Supreme Court in *Zadvydas*.

### III. DUE PROCESS

Feika also argues that his continued detention violates the Due Process Clause. *See* Docket Item 1 at 4. The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V. The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So-called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *Id*. (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id*. "This requirement has traditionally been referred to as 'procedural' due process." *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a

7

person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government."  *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[ ]."  *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.   Substantive Due Process

Feika argues that his detention violates his right to substantive due process. Docket Item 1 at 4.  He has been in DHS custody since November 18, 2019—18 months.  *See* Docket Item 4-1 at ¶ 19.  But this Court cannot say that detention that long violates due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community,

see *Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.    Procedural Due Process

Feika also challenges the procedural safeguards that apply to his continued detention.  *See* Docket Item 1 at 14.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, *J.*, concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry."  *Hemans*, 2019 WL 955353, at *5.  "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged."  *Id*.  "If it has not, then there is no procedural due process violation."  *Id*.  "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors."  *Id*. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  "If the government has not provided

the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1.    Feika's Detention

"[W]hen weighing the lawfulness of continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Feika has been in DHS custody since November 18, 2019—about 18 months. *See* Docket Item 4-1 at ¶ 19. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein). In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of procedural due process analysis.[7]

---

[7] *See, e.g.*, *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb. 14, 2020) (approximately seven months); *Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) (approximately nine and a half months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months and over nine months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of . . . detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Feika's 18-month detention far exceeds the four-month average cited in *Demore* and is about half a year more than the one-year touchstone that many courts use.  The length of Feika's detention therefore strongly supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Feika's detention.  *Sajous v. Decker*, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).  "The more that the conditions under

---

may often become unreasonable by the one-year mark, depending on the facts of the case.").  *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that "procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 2018 WL 4466052, at *5.

The government has submitted the declaration of a BFDF employee regarding the conditions of Feika's detention. *See* Docket Item 9-3. In that declaration, the government avers that the facility is unlike a prison because "most persons . . . are not locked in a cell," *id.* at ¶ 8; they "do not face the same level of restrictions typical for someone held at a prison," *id.* at ¶ 7; and they "ordinarily may move throughout the BFDF without being required to wear handcuffs or legcuffs," *id.* at ¶ 11. "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* at ¶ 8. And "persons held at BFDF [are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and] are brought to the Special Housing Unit ("SHU")." *Id.* at ¶ 11.

Because of the cells, restraints, and discipline in the SHU, and because detainees are not free to leave their confinement, conditions at BFDF certainly "resemble penal confinement" in several ways. *Muse*, 2018 WL 4466052, at *5. And although the government states that "[Feika] is presently detained in . . . a dormitory with bunk beds, as opposed to being locked in a cell," Docket Item 5 at 17, such conditions are not "meaningfully different from [detention in] a penal institution." *Sajous*, 2018 WL 2357266, at *11. This factor therefore also weighs in Feika's favor, albeit not as strongly as the first factor.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention

unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process.  A [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.  The mere fact that a [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision.  The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

*Id*.

The respondents argue that "[Feika] has no right to be free from detention under the law, . . . [and] just as the [g]overnment's choice to protect its right through legal action before the BIA undoubtedly should be considered in the determination of [Feika]'s deletion period, [Feika]'s own choices in challenging his removal from the United States must likewise be considered against him, and not factored in any calculation of what constitutes undue or prolonged detention."  Docket Item 5 at 14. This argument misses the mark for two reasons.  First, as noted above, everyone in the United States—including Feika—has a constitutionally protected right not to be detained without due process of law.  *See supra* at 5-8.  Even immigrants present in the country illegally have that right.  *Id.*  So the government's assertion that that "[Feika] has no right

13

to be free from detention under the law," Docket Item 5 at 14, at best begs the question presented here.

Second, the government's and Feika's decisions to "exercise [their] rights through legal action" do not result in periods that somehow cancel each other out—counteracting the reality of time. Feika has been in detention for a year and a half. And except for any delay that resulted from his bad faith or abuse of process, Feika should not be held responsible for his time in detention simply because he chose to challenge his deportation.

In this regard, the respondents also contend that Feika "has been the cause of numerous delays in his immigration proceedings, necessarily extending the time period for which he is detained." Docket Item 5 at 6. Specifically, they argue that "approximately 4 months delay was caused by [Feika]'s requests for adjournments to prepare, file a motion to terminate, file a Form I-589 application, and seeking an enlargement of time to file his brief to the BIA." *Id.* at 13. But none of that is an "abus[e of] the processes provided to" Feika. *See Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken*, 556 U.S. at 436). And even subtracting the four months the government blames on Feika, his detention still is longer than the one-year benchmark and more than three times the four-month average cited in Demore. *See supra* at 10-11.

What is more, even under the government's own calculus, it is responsible for considerable delays in Feika's process. For example, the government caused "a delay of 1 month" to locate a translator. *Id.* at 13. The government then appealed the IJ's initial grant of relief from removal to the BIA. *Id.* The BIA remanded the matter to the IJ, and [a]fter three adjournments due to [Feika] being in COVID-related quarantine," the IJ

denied "all forms of relief from removal which [Feika] had sought." Docket Item 8 at 1. Feika timely appealed that decision on April 21, 2021, an appeal that the government has yet to decide. *Id.* The third factor also weighs in Feika's favor.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. Because Feika's claims remain pending before the BIA, *see id.*, this Court declines to weigh their merits.

After balancing all these factors, this Court finds that Feika's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably-prolonged detention demands.

### 2.      The Process Due to Feika

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Feika's continued detention without an individualized hearing, at which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Feika's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418,

427 (1979).  Of course, he has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Feika has not conceded his deportability, and the resolution of that issue remains pending before the BIA.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.[8]  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  Feika states that his two brothers, two sisters, and grandmother are United States citizens or otherwise lawfully in the country.  *See* Docket Item 1 at 3.  These family members live not in Sierra Leone, where the government wishes to send him, but in the United States, where Feika himself has lived since 2004, *see* Docket Item 4-1 at ¶ 5.  Thus, if Feika chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual."  *Landon*, 459 U.S. at 34.

---

[8] The government repeatedly notes that Feika "holds the keys to his release": he can simply agree to be deported and leave the country.  *See, e.g.,* Docket Item 5 at 7 ("the alien holds the keys to his release and may secure such release at any time by . . . departing the country"), 10 ("the detainee can consent to deportation" and thereby end his detention), 14 (Feika could end his detention "by surrendering to removal").  Again, the government's glib argument misses the mark; again, it begs the question.  Feika has the right to challenge his deportation.  He has an interest in being free from confinement *in the United States,* and he has the right to be free unless restrained after having been given the due process to which he is entitled.  He wants to remain in this country to be with members of his immediate family.  The fact that he can gain his freedom by giving up and leaving the country adds little—perhaps nothing—to the due process analysis.

This Court recognizes that the government's interest in detaining Feika also may be strong.  The government contends that Feika's risk of flight and disregard for the law justify his continued detention.  *See* Docket Item 5 at 19.  In fact, Feika is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities."  *Jennings*, 138 S. Ct. at 837.  "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[9]  *Id*. at 846.  Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[10]  "The government's interest in preventing crime by arrestees is both legitimate and compelling."  *Salerno*, 481 U.S. at 749.  And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty*, 943 F.2d at 211.

---

[9] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[10] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing.  *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

### 3.    The Procedures Used Thus Far

When Feika was taken into custody, a notice of custody determination informed him that he would be detained pending the outcome of his removal proceedings. *See* Docket Item 4-1 at ¶ 19.  Since then, he apparently has had no hearing on whether his continued detention is necessary.[11]  This Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Feika's liberty interests.

In fact, section 1226(c) prohibits the government from offering Feika the opportunity to challenge at a hearing whether he is, in fact, a danger or a flight risk. *Jennings*, 138 S. Ct. at 846.  Now that his detention has been unreasonably prolonged, however, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to him.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a . . . proceeding

---

[11] A custody redetermination hearing, along with another hearing, was scheduled to be held on February 3, 2020.  *See* Docket Item 4-1 at ¶ 20.  But Feika's counsel withdrew the request for bond during that hearing.  *See id.* at ¶ 21.

are both 'particularly important' and 'more substantial than mere loss of money'"

(quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal

proceedings based on its general interests in immigration detention, the "[g]overnment

[is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by

clear and convincing evidence that no conditions of release can reasonably assure the

safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481

U.S. at 751), or ensure that the noncitizen will appear for any future proceeding.[12]  This

requires consideration of less-restrictive alternatives to detention.  *See id*.; *cf. United

States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less

restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the

Government's obligation to prove that the alternative will be ineffective to achieve its

goals.").

## C.    Conclusion

Feika's section 1226(c) detention has been unreasonably prolonged.  Because

section 1226(c) does not require an individualized hearing in which the government

must demonstrate by clear and convincing evidence that no conditions of release can

reasonably serve the government's compelling regulatory interests in detaining him, it is

unconstitutional as applied to him.  As such, his continued detention violates the Due

Process Clause.

---

[12] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

Feika must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that his continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider—and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.[13]

## IV.   ATTORNEY'S FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT

Feika also seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA").  Docket Item 1 at 5.  Although *pro se* litigants are not entitled to collect attorney's fees under EAJA, *see S.E.C. v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994) (extending the Supreme Court's bar on *pro se* litigants' recovering attorney's fees under 42 U.S.C. § 1988 to actions under EAJA), they may collect costs, *see Iannaccone v. L.*, 1 F. App'x 96, 97 (2d Cir. 2001) (holding that a *pro se* litigant "is entitled to an awards of costs").

EAJA provides, in relevant part, that

[e]xcept as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the

_____

[13] In his prayer for relief, Feika also asks that the Court "enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention of Petitioner."  Docket Item 1 at 5.  But because the respondents' compliance with this conditional writ would remedy the violation of Feika's due process rights, it is unnecessary to reach the issue of injunctive relief here.

fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1).  Immigration habeas petitions are "civil actions."  *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) (holding "that 'civil actions' under EAJA encompasses *immigration* [but not criminal] habeas petitions") (emphasis in original).  And because this Court grants Feika's petition in part, he is a "prevailing party."  If Feika wishes to recover costs, he may submit a separate motion **within 30 days of this order** detailing the amount he believes he is owed.

His motion for costs and attorney's fees is otherwise denied.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Feika from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Feika's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to

detention would also address the government's interests.  In other words, the decisionmaker must find that no condition or combination of conditions of release can reasonably ensure Feika's appearance and the safety of the community—that is, even with conditions, Feika presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order,** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order; and it is further

ORDERED that **within 30 days of the date of this decision and order**, Feika may move for costs under EAJA, detailing the amount he believes he is owed, but his motion for costs and attorney's fees is otherwise denied.


SO ORDERED.

Dated:         May 19, 2021
               Buffalo, New York


_____
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE